**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 24, 2024**

# In the Court of Appeals of Georgia

A24A0484. COOPER v. THE STATE.

WATKINS, Judge.

Travon Cooper appeals from an order denying his amended motion for new trial after a jury found him guilty of possession of a firearm by a first offender probationer.[1] Cooper argues that the trial court abused its discretion in denying his motion for a mistrial and that he was denied effective assistance of counsel at trial. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict,[2] the evidence shows that around 5:00 a.m. on the morning of October 12, 2019, Cooper drove to a Waffle

---

[1] See OCGA § 16-11-131 (b).

[2] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

House in Rockdale County and parked in a lot on the "back side" of the restaurant at an adjacent business and not where Waffle House customers normally parked. For approximately an hour, Cooper walked around the building multiple times, entered and exited the restaurant repeatedly, and went in and out of the restroom, all without ordering anything.

Cooper was wearing tight pants or "skinny" jeans, and Waffle House employees could see the outline of what appeared to be a gun in his front pocket and the tip of the gun sticking out of the pocket. An employee called 911, and law enforcement officers arrived shortly thereafter while Cooper was in the restroom. When Cooper came out of the restroom, officers could see a "bulge" in his right pocket. Upon seeing the officers, Cooper immediately ordered "three burgers" at the counter and went back into the restroom.

One of the officers knocked on the restroom door, announced the police presence, and asked Cooper to come out. The officers heard a toilet flush, and after a few moments Cooper came out. The bulge was no longer visible in Cooper's pocket, but the officers found a firearm in the restroom trash can. According to Waffle House employees, the trash can in the single-stall, windowless restroom had been recently

emptied in anticipation of the 7:00 a.m. shift change. The serial number on the firearm had been obscured with white paint or Wite-Out, but the officers ultimately determined that the firearm had been reported stolen.

Cooper was charged with theft by receiving stolen property,[3] tampering with evidence,[4] and possession of a firearm by a first offender probationer. At the conclusion of the first part of the bifurcated trial, the jury found Cooper not guilty of the first two charges. Following the reading of the firearm charge and opening statements, the State tendered a certified copy of Cooper's prior adjudication. The jury found him guilty on the firearm charge, and the trial court later denied Cooper's amended motion for new trial. This appeal followed.

1. Cooper argues that the trial court abused its discretion when it denied his motion for a mistrial after the State improperly placed his character into evidence by suggesting that he was engaging in a robbery at the Waffle House.[5]

---

[3] See OCGA § 16-8-7 (a).

[4] See OCGA § 16-10-94 (a).

[5] Cooper argues that the State did so "in disregard of a motion in limine." The trial court, however, did not grant Cooper's motion in limine on this ground. Instead, the trial court found that employees could "testify they thought [Cooper] was going to commit a robbery . . . if that [was] why they called the police[.]" The court added

"The refusal to grant a mistrial based on a prejudicial comment lies within the discretion of the trial court, and we will not interfere with that discretion on appeal in the absence of manifest abuse."[6]

During cross-examination, trial counsel questioned one of the responding officers about his investigation and why the officer had not confirmed whether Cooper was on a telephone call for a significant amount of time while he was in Waffle House. After the officer responded that it was not relevant to the stolen firearm, trial counsel continued the line of questioning, asking several times whether Cooper being on a 35-minute phone call would have explained Cooper's "pacing around." On redirect, the State inquired whether, "at the conclusion of this investigation [Cooper was] charged with robbery[,]" and the officer responded, "No."

Counsel objected, and the court instructed the jury to disregard entirely "the mention of whether [Cooper] was charged with robbery[.] That is not relevant in this

---

that it would be "more than happy to give a limiting instruction" depending on how the testimony came out, but noted that "the District Attorney would be wise to counsel these witnesses to try and avoid this issue altogether, if possible."

[6] (Citation and punctuation omitted.) *Body v. State*, 367 Ga. App. 506, 511 (3) (887 SE2d 356) (2023) ("Trial courts are vested with great discretion to grant or deny mistrials because they are in the best possible position to determine whether one is warranted.") (citation and punctuation omitted).

case and should not have been brought up." The State followed up with, "So you were only investigating the firearm charge?" The officer responded, "We — I don't know if I can say it. We were investigating, but from my experience, it could have been a bigger crime."

The defense again objected, and the trial court admonished the State for going "right back into" what the court had "just told them" not to. The trial court instructed the jury "to ignore the last question and answer. Do not consider that in reaching your verdict in this case. I am going to instruct the District Attorney's Office to cease this line of questioning." Trial counsel then requested to take up a matter outside of the jury's presence. After the jury was excused, the defense moved for a mistrial. The trial court denied the motion, finding that "the curative instructions were adequate."

> In reviewing a trial court's exercise of discretion in denying a motion for mistrial based on the improper admission of bad character evidence, we consider the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety. We also consider additional facts like whether the reference to the improper character evidence is isolated and brief, whether the jury's exposure was repeated or extensive, and whether the introduction of the objectionable evidence was inadvertent or whether it was

deliberately elicited by the state. We will not disturb a trial court's exercise of discretion in denying a motion for mistrial unless a mistrial is essential to preserve the defendant's right to a fair trial.[7]

Here, the references to whether Cooper had been charged with robbery and the investigation of what "could have been a bigger crime" were brief and isolated. The trial court instructed the jury that whether Cooper was charged with robbery was not relevant, to ignore the latter question and answer, and not to consider them in reaching a verdict. As Cooper has made no showing that the grant of a mistrial was necessary to preserve his right to a fair trial,[8] we conclude that the trial court properly exercised its discretion by giving an appropriate curative instruction rather than granting a mistrial.[9]

---

[7] (Citations and punctuation omitted.) *Body*, 367 Ga. App. at 511 (3).

[8] See *Smith v. State*, 244 Ga. App. 165, 168 (3) (534 SE2d 903) (2000).

[9] See *Williams v. State*, 247 Ga. App. 88, 90 (2) (543 SEd 402) (2000) (Even assuming a witness's remarks regarding an earlier purchase of cocaine from the defendant and the witness's suspicions about where the defendant stored cocaine impermissibly placed the defendant's bad character before the jury, "the decision to give curative instructions to the jury rather than grant the mistrial request following the introduction of bad character evidence [was] within the discretion of the trial court and [was] not error.") (citation and punctuation omitted).

2. Cooper contends that he was denied effective assistance of counsel in several respects in that his trial counsel failed to timely stipulate to his first offender status, failed to request a jury instruction regarding the use of his first offender probationary sentence, failed to challenge the constitutionality of OCGA § 16-11-131 as applied, and failed to investigate and prepare for trial.

To prevail on a claim of ineffective assistance of counsel, "a defendant must establish, pursuant to *Strickland v. Washington*,[10] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense."[11]

> To show deficient performance, the defendant must demonstrate that counsel performed counsel's duties in an objectively unreasonable way, considering all of the circumstances and in the light of prevailing professional norms. To establish prejudice, [the defendant] must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.[12]

---

[10] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[11] (Citation and punctuation omitted.) *Coney v. State*, 290 Ga. App. 364, 370 (3) (659 SE2d 768) (2008).

[12] (Citations and punctuation omitted.) *Payne v. State*, 314 Ga. 322, 328-329 (3) (877 SE2d 202) (2022).

"In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo."[13]

(a) Cooper argues that trial counsel was ineffective in failing to stipulate to his first offender status and that, as a result, the jury saw that the prior charge was robbery. Cooper contends that the nature of the prior charge was particularly prejudicial because of testimony suggesting that he was planning to rob the Waffle House.

"A defendant may be prejudiced by the admission of a prior conviction into evidence when the prior conviction is of the nature likely to inflame the jury's passions and raise the risk of a conviction based on improper considerations."[14] The Supreme Court of Georgia has held, however, that "even violent crimes, crimes

---

[13] (Citation and punctuation omitted.) *Coney*, 290 Ga. App. at 370 (3).

[14] (Citation and punctuation omitted.) *Jackson v. State*, 317 Ga. 95, 103-104 (2) (b) (891 SE2d 866) (2023) (holding that, "even if [the defendant's] counsel was deficient for failing to stipulate to his convicted-felon status, [the defendant] ha[d] failed to show that there [was] a reasonable probability that the result of his trial would have been different" where the prosecutor did not emphasize the nature of the aggravated assault conviction and where the evidence against the defendant was strong).

involving firearms, and drug offenses were not likely to inflame the jury's passions in murder cases. [Thus,] the absence of a stipulation does not always have prejudicial impact."[15]

Here, the prior robbery offense was identified when the prosecutor introduced, and published without objection, a certified copy of the prior adjudication, and during closing arguments when the prosecutor said "as you see in the charge[,] the defendant was previously charged and convicted in 2014 of robbery by force." Because the mentions of the prior felony were minimal and appropriate for proof of the charged crime,[16] Cooper has failed to show that there was a reasonable probability that the outcome of the trial would have been different if trial counsel had stipulated to Cooper's felony status.[17] Having determined that Cooper has failed to show prejudice,

---

[15] (Citation and punctuation omitted.) *Prickett v. State*, 314 Ga. 435, 439 (1) (877 SE2d 573) (2022).

[16] See *Chavez v. State*, 307 Ga. 804, 810 (2) (a) (837 SE2d 766) (2020) (holding there was no prejudice from counsel's failure to stipulate to first offender status, although the State referenced the prior disposition in its closing argument, where the prior offense was non-violent and the evidence against the defendant was strong).

[17] See *Bentley v. State*, 307 Ga. 1, 10 (2) (b) (834 SE2d 549) (2019) ("[T]he admission of the exhibit referencing [the defendant's] rape and incest convictions had no probable effect on the outcome of the trial, and he therefore cannot prevail on this claim of ineffective assistance.").

we need not examine the deficient performance prong of his claim of ineffective assistance of counsel.[18]

(b) In a related argument, Cooper contends that counsel was ineffective in failing to request an instruction that the jury should not use his first offender probationary sentence to prove his character to commit the charged crime.

During its deliberations on the firearm possession charge, the jury asked the trial judge whether it was to consider the first conviction from 2014. Trial counsel requested that the court instruct the jury that the prior conviction could only be used for the limited purpose of proving that Cooper was a first offender probationer and not whether Cooper had committed another offense. The trial court granted the request and recharged the jury that the "prior conviction may be used only for the limited purpose of proving that [Cooper] is a [f]irst [o]ffender probationer."

Cooper has not presented anything to overcome the presumption that the jury followed the trial court's instructions,[19] which mirrored the tailored pattern jury

---

[18] See *Payne*, 314 Ga. at at 328 (3).

[19] See *Williams v. State*, 313 Ga. 443, 450 (1) (870 SE2d 397) (2022).

instruction.[20] Accordingly, we conclude that "the evidence of [Cooper's] prior first-offender adjudication — especially when contrasted with the strong evidence of his guilt in this case — was only a minor consideration at the trial and had no probable effect on the outcome of his trial."[21]

(c) Cooper argues that he was not informed that he was forfeiting his Second Amendment right to possess a firearm when he was sentenced as a first offender probationer because the prohibition in his sentence only applied to someone "convicted" and because there was no express waiver (as with a Fourth Amendment

---

[20] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2007), § 1.34.00 ("Sometimes evidence is admitted (for a limited purpose) or (against some parties and not others) or (for some counts and not others). Such evidence may be considered by the jury (for the sole issue or purpose) (against that/those party(ies)) (only for the counts) for which the evidence is limited and not for any other purpose.").

[21] (Citation and punctuation omitted.) *Collins v. State*, 312 Ga. 727, 749 (8) (c) (864 SE2d 85) (2021).

waiver).[22] Thus, he contends that OCGA § 16-11-131 was unconstitutional as applied to him, and counsel was ineffective for failing to raise this argument.

The certified copy of Cooper's prior adjudication indicates that he pled guilty to robbery[23] in 2014, and was sentenced as a first offender probationer under OCGA § 42-8-60.[24] A provision titled "FIREARMS" stated: "If you are convicted of a crime punishable by imprisonment for a term exceeding one year, . . . it is unlawful for you to possess or purchase a firearm including a rifle, pistol, or revolver, or ammunition[.]"

---

[22] See generally *Martin v. State*, 370 Ga. App. 275, 276-277 (2) (896 SE2d 874) (2024) ("A probationer who has executed a Fourth Amendment waiver may be subject to a warrantless search if there is reasonable suspicion of criminal activity, or for the purpose of monitoring the extent of the probationer's compliance (or lack of compliance) with the terms of [his] probation.") (citations and punctuation omitted).

[23] See OCGA § 16-8-40 (a).

[24] See OCGA § 42-8-60 (a) (allowing first offenders to enter a plea of guilty and to be placed on probation or incarcerated without an adjudication of guilt); 42-8-60 (e) (1) (If the probation or incarceration term is completed without violation, the defendant is discharged without an adjudication of guilt and is not considered to have a criminal conviction.).

Although "the entry of a guilty plea under OCGA § 42-8-60 is not a 'conviction' within the usual definition of that term[,]"[25] OCGA § 16-11-131 (b) expressly prohibits possession of a firearm by "[a]ny person who is on probation as a felony first offender pursuant to Article 3 of Chapter 8 of Title 42[.]"

To the extent Cooper is arguing that a first offender probationer must be explicitly advised that he is waiving his Second Amendment rights, he has cited no authority in support of this argument.[26] Because "[a] lawyer is not deficient for failing to make an argument that would require an extension of the law[,]"[27] Cooper has

---

[25] *Priest v. State*, 261 Ga. 651, 651-652 (2) (409 SE2d 657) (1991); see OCGA § 42-8-60 (e) (1); see also OCGA § 16-1-3 (4) (defining "conviction" as "a final judgment of conviction entered upon a verdict or finding of guilty of a crime or upon a plea of guilty").

[26] Although Cooper relies on a recent decision of the Supreme Court of the United States to argue that there is a general right to public carry, that case explicitly limits its holding to"law-abiding citizens." *N. Y. State Rifle & Pistol Assn. v. Bruen*, 597 U. S. 1, 8-10 (142 SCt 2111, 213 LE2d 387) (2022); see also id. at 39 (III) (A) ("It is undisputed that petitioners . . . — two ordinary, law-abiding, adult citizens — are part of "the people" whom the Second Amendment protects."); id. at 91 (I) (concurring opinion) ("[A] State may not enforce a law, like New York's Sullivan Law, that effectively prevents its law-abiding residents from carrying a gun [to defend themselves]. That is all we decide. Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun.").

[27] *Payne*, 314 Ga. at 331 (3) (d).

13

failed to establish deficient performance. Accordingly, we need not examine the prejudice prong of his claim of ineffective assistance of counsel.[28]

(d) In his final claim of ineffective assistance of counsel, Cooper argues that his attorney failed to investigate and prepare, specifically failing to review the certified copy of the prior conviction. Cooper contends that, had counsel done so, she would have found that the conviction lacked any notice to Cooper that he could not possess a firearm.

Trial counsel testified at the motion for new trial hearing that she prepared for trial by, inter alia, reviewing all the evidence and providing all discovery to Cooper before trial. She testified further that neither Cooper nor his mother[29] had told counsel that Cooper did not know he could not have a firearm. Cooper failed to present evidence at his motion for new trial hearing that he did not receive notice that he could not possess a firearm while on probation. "Unfounded speculation about what additional investigation might have uncovered or about what unnamed witnesses may

_____

[28] See id. at 328 (3).

[29] Counsel testified that she was limited in meeting with Cooper prior to trial due to COVID-19 restrictions in place at the jail. However, she did not believe that the restrictions had any effect on her ability to represent Cooper at trial.

have testified to cannot support a claim that trial counsel was professionally deficient, nor can it establish prejudice."[30] Cooper has thus failed to demonstrate that he was denied effective assistance of counsel.

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur.*

---

[30] (Citation and punctuation omitted.) *Payne*, 314 Ga. at 334 (3) (g).